UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| DEBORAH G.,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of the Social Security Administration,<br><br>Defendant. | **REPORT AND RECOMMENDATION TO REVERSE AND REMAND COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS**<br><br>Case No. 1:25-cv-00009<br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiff Deborah G.[1] brought this action for judicial review of the denial of her application for disability insurance benefits by the Commissioner of the Social Security Administration.[2] The administrative law judge (ALJ) who addressed Ms. G.'s application determined she did not qualify as disabled.[3] Ms. G. argues the ALJ erred by (1) failing to include limitations related to concentrating, persisting, and maintaining pace in the residual functional capacity determination, (2) failing to properly articulate his evaluation of the psychological consultative examiner's medical opinions, and (3) failing to adequately develop the record.[4]

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in judicial opinions in certain cases, including social security cases, the plaintiff is referred to by first name and last initial only.

[2] (*See* Compl., Doc. No. 1.)

[3] (Certified Tr. of Admin. R. ("Tr.") 17–30, Doc. No. 8.)

[4] (*See* Opening Br. 1, Doc. No. 12.)

As explained below, Ms. G. is correct that the ALJ failed to adequately articulate his evaluation of the psychological consultant's medical opinions, as required by agency regulations.  Because this error requires reversal, the other contentions of error need not be addressed.  Accordingly, the undersigned[5] recommends the district judge reverse the Commissioner's decision and remand for additional administrative proceedings.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides for judicial review of the Commissioner's final decision.  This court reviews the ALJ's decision to determine whether substantial evidence supports his factual findings and whether he applied the correct legal standards.[6]  "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[7]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[8]  Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[9]  Substantial evidence is "such relevant evidence as a

---

[5] This case is referred to the undersigned magistrate judge under 28 U.S.C. § 636(b)(1)(B).  (Doc. No. 6.)

[6] *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[7] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).

[8] *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation modified).

[9] *Id.* at 103 (citation omitted).

reasonable mind might accept as adequate to support a conclusion."[10] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[11] And the court may not reweigh the evidence or substitute its judgment for that of the ALJ.[12]

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" expected to result in death or last for at least twelve consecutive months.[13] An individual is considered disabled only if her impairments are so severe, she cannot perform her past work or "any other kind of substantial gainful work."[14]

In determining whether a claimant qualifies as disabled, the ALJ uses a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;

2) she has a severe medically determinable physical or mental impairment;

3) the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);

4) she has the residual functional capacity to perform past relevant work; and

---

[10] *Id.* (citation omitted).

[11] *Lax*, 489 F.3d at 1084 (citation omitted).

[12] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[13] 42 U.S.C. § 423(d)(1)(A).

[14] *Id.* § 423(d)(2)(A).

5)  she has the residual functional capacity to perform other work, considering her age, education, and work experience.[15]

In the first four steps, the claimant has the burden of establishing disability.[16] And at step five, the Commissioner must show the claimant retains the ability to perform other work in the national economy.[17]

## PROCEDURAL HISTORY

Ms. G. applied for disability insurance benefits under Title II of the Social Security Act[18] in February 2022, alleging she became disabled in July 2021.[19]  After an administrative hearing,[20] the ALJ issued a decision in March 2024, denying benefits.[21]

At step two of the sequential evaluation, the ALJ found Ms. G. had the following severe impairments: "sequela of breast cancer and related treatment (including upper extremity neuropathy and cognitive limitations); diabetes mellitus type 2 with neuropathy; coronary artery disease; osteoarthritis of the right foot, status-post surgery

---

[15] *See* 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

[16] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[17] *Id.*

[18] 42 U.S.C. §§ 401–434.

[19] (*See* Tr. 17, 188–89.)

[20] (*See* Tr. 38–68.)

[21] (Tr. 17–30.)

with chronic edema; obesity; and, unspecified depressive disorder."[22]  He concluded

Ms. G. also had nonsevere impairments: "hypertension, hyperlipidemia, obstructive

sleep apnea, vision problems (cataracts and mild retinopathy), headaches, and alleged

carpal tunnel/cubital tunnel syndrome."[23]

At step three, the ALJ found Ms. G.'s impairments did not meet or medically

equal an impairment listing.[24]  The ALJ addressed the four areas of mental functioning

known as the "paragraph B" criteria: (1) understanding, remembering, or applying

information; (2) interacting with others; (3) concentrating, persisting, or maintaining

pace; and (4) adapting or managing oneself.[25]  The ALJ found Ms. G. had a mild

limitation in understanding, remembering, or applying information; a moderate limitation

in concentrating, persisting, or maintaining pace; and no limitation in the other two

areas.[26]

The ALJ then determined Ms. G. had the residual functional capacity to perform

"sedentary work" with additional restrictions.  Specifically, she could "occasionally

engage in postural activities except no climbing of ladder, ropes or scaffolds";

---

[22] (Tr. 19.)

[23] (Tr. 20.)

[24] (Tr. 20–22.)

[25] (Tr. 21–22.)

[26] (*Id.*)

"frequently reach, handle and finger bilaterally"; "occasionally operate foo[t] pedals"; and "understand, remember and carry out simple and detailed instructions."[27]

At step four, based on this residual functional capacity assessment and the testimony of a vocational expert, the ALJ found Ms. G. could perform past work as a customer service representative.[28]  Accordingly, the ALJ found Ms. G. not disabled and denied her claim.[29]  This decision became final when the Appeals Council denied Ms. G.'s request for review.[30]

**ANALYSIS**

Ms. G. raises three claims of error relating to the ALJ's mental residential functional capacity (RFC) determination.  First, Ms. G. asserts the ALJ erred by failing to include limitations related to concentrating, persisting, and maintaining pace in her RFC, despite finding a moderate limitation in this area at step three.[31]  Second, Ms. G. contends the ALJ failed to properly articulate his evaluation of the medical opinions provided by Dr. Tanya Colledge, the psychological consultative examiner.[32]  Third, Ms. G. contends the ALJ failed to adequately develop the record because he did not re-

---

[27] (Tr. 22.)

[28] (Tr. 30.)

[29] (*Id.*)

[30] (Tr. 1–3.)

[31] (Opening Br. 6–8, Doc. No. 12.)

[32] (*Id.* at 8–10.)

contact Dr. Colledge for a clarified opinion.[33]   Because Ms. G.'s second argument is correct and requires reversal, the court need not address her other contentions of error.

A claimant's RFC reflects the most she can do in a work setting considering her limitations.[34]  In assessing RFC, the ALJ considers "the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."[35]  The ALJ considers all relevant evidence in the record.[36]

In determining a claimant's RFC, an ALJ must assess the persuasiveness of medical opinions and prior administrative findings, based on the following factors: (1) supportability (the objective medical evidence and supporting explanations presented by the medical source); (2) the consistency of the opinion with evidence from other medical and nonmedical sources; (3) the relationship with the claimant (including its length, frequency, purpose, and extent—and whether it was an examining relationship); (4) any specialization; and (5) any other relevant factors.[37]  The most

---

[33] (*See id.* at 10–11.)

[34] *See* 20 C.F.R. § 404.1545(a)(1); *see also* SSR 96-8p, 1996 SSR LEXIS 5, at *1–2 (July 2, 1996).

[35] SSR 96-8p, 1996 SSR LEXIS 5, at *5.

[36] *See* 20 C.F.R. § 404.1545(a)(3).

[37] *Id.* § 404.1520c(b), (c)(1)–(5).

important factors are supportability and consistency, and the ALJ must explain how he evaluated both factors.[38]

Ms. G. contends the ALJ failed to explain his evaluation of the supportability or consistency of Dr. Colledge's opinions regarding her mental limitations.[39]  In response, the Commissioner asserts the ALJ's evaluation was adequate, pointing to the ALJ's discussion of Dr. Colledge's report throughout the decision.[40]  Ms. G. is correct, and the ALJ's failure to articulate how he considered supportability and consistency necessitates reversal.

Ms. G. testified she had residual symptoms of fatigue and "chemo brain" from breast cancer treatment, which caused problems with short-term memory.[41]  On function reports, Ms. G. indicated she had memory deficits, could only pay attention for ten minutes, and became irritable with changes in routine.[42]  Ms. G.'s partner also reported Ms. G. had problems with memory and completing tasks.[43]

Dr. Colledge completed a psychological consultative examination of Ms. G. on February 9, 2023.[44]  Ms. G. reported feeling depressed because of her cancer

---

[38] *Id.* § 404.1520c(b)(2).

[39] (Opening Br. 8–9, Doc. No. 12.)

[40] (Comm'r's Br. 9–11, Doc. No. 15.)

[41] (Tr. 23, 55–56.)

[42] (Tr. 24, 328–35, 356–66.)

[43] (Tr. 24, 319–27.)

[44] (Tr. 1625–30.)

diagnosis and treatment, and she also reported short-term memory problems.[45]  In memory testing, Ms. G. scored in the low average range for visual working memory and delayed memory, and the average range in other areas.[46]  Dr. Colledge noted Ms. G. "demonstrated a relative deficit on a task that assessed her short-term auditory memory of storied information."[47]  Dr. Colledge opined Ms. G. could remember and carry out "simple as well as some multi-step instructions."[48]  She explained Ms. G.'s "[c]urrent memory testing indicated that she was functioning primarily in the average to low average range with regard to her memory functioning."[49]  She also stated Ms. G. was "potentially capable of completing at least some basic work tasks."[50]  But she opined Ms. G. would have "some impairment in her capacity to tolerate work stress."[51]  And she stated Ms. G. also would have difficulty keeping any kind of consistent schedule because of her physical health and treatment schedule.[52]

---

[45] (Tr. 1626.)

[46] (Tr. 1628.)

[47] (Tr. 1629.)

[48] (*Id.*)

[49] (*Id.*)

[50] (*Id.*)

[51] (*Id.*)

[52] (*Id.*)

The ALJ described Dr. Colledge's report in detail in the RFC analysis. He acknowledged the symptoms Ms. G. reported to Dr. Colledge, and he summarized the examination and testing as follows:

> During mental status testing, the claimant was noted to be fully oriented, with adequate fund of knowledge and no impairment in long-term memory. Her immediate and short-term memory was also assessed as unimpaired. Attention and concentration were adequate. The claimant had normal speech and her responses were logical and coherent. Her affect was generally appropriate. Standardized test findings indicated low average to average memory, but no significant deficits were observed.[53]

The ALJ also discussed some of Dr. Colledge's opinions in the portion of the RFC analysis addressing prior administrative medical findings and medical opinion evidence.[54] In a paragraph summarizing the evidence relating to mental limitations, the ALJ first discussed the state agency consultants' findings[55] and noted the medical record contained "little mention of [Ms. G.'s] cognitive complaints," although she was prescribed medication for depression.[56] The ALJ then noted that Dr. Colledge opined Ms. G. "appear[ed] capable of remembering and carrying out simple and some multi-step instructions."[57] The ALJ stated "[m]emory testing at the time showed the claimant

---

[53] (Tr. 27.)

[54] (Tr. 29–30.)

[55] Specifically, the ALJ noted "state agency consultants who previously reviewed this case found the record insufficient to establish any severe mental impairments." (Tr. 29.) But "[a]fter considering all the evidence," the ALJ "[found] the records supportive of a severe depressive disorder, and also note[d] the claimant to have some cognitive complaints relating to her cancer treatment (chemotherapy)." (Id.)

[56] (Id.)

[57] (Id. (citing Tr. 1629).)

to function in the low average to average range."[58]  The ALJ also indicated Ms. G. "was noted to have some impairment in her ability to tolerate work stress, but mostly she seemed to complain of physical health issues keeping her from performing work on a consistent schedule."[59]  Further, Ms. G. "was described as leading a relatively independent life"; "[s]he [could] make basic meals and do some light house chores"; "[s]he manage[d] her own money and [was] able to drive and shop" and "[s]he lives with a roommate and does not report difficulty getting along with others."[60]  The ALJ then concluded: "This evidence is persuasive in finding the claimant capable of understanding, remembering and carrying out simple and detailed instructions, without any additional significant work-related mental limitations."[61]

Notably, the ALJ did not specifically indicate he was evaluating the persuasiveness of Dr. Colledge's opinions, as a whole, in this discussion.  Rather, the listed certain opinions from Dr. Colledge's report among other evidence relating to mental abilities and limitations, then stated all this evidence was "persuasive" in making his mental RFC determination.  But this does not make clear whether or how the ALJ evaluated the persuasiveness of Dr. Colledge's opinions as a whole.

---

[58] (*Id.*)

[59] (*Id.*)

[60] (Tr. 29–30.)

[61] (Tr. 30.)

Significantly, nowhere did the ALJ state whether he found Dr. Colledge's opinions supported or consistent with the other record evidence.  One might reasonably assume the ALJ considered her opinions supported and consistent, where the ALJ described some of her opinions (and other evidence) as "persuasive."[62]  But the ALJ did not expressly state this, and he did not articulate *how* he considered the supportability and consistency factors.  Where agency regulations specifically require an ALJ to "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions,"[63] the ALJ's failure to do so here was error.

The Commissioner contends the ALJ's evaluation of Dr. Colledge's opinions was sufficient based on his discussion of her report throughout the decision.[64]  The Commissioner identifies certain portions of the ALJ's decision as indicating Dr. Colledge's opinions were supported, and other portions as indicating Dr. Colledge's opinions were consistent.[65]  The problem is the ALJ himself did not draw these connections or explain how the evidence he discussed was supported or consistent. And the court cannot engage in post hoc rationalization by assessing these factors in the first instance.[66]

---

[62] (*See* Tr. 29–30.)

[63] 20 C.F.R. § 404.1520c(b)(2).

[64] (Comm'r's Br. 9–11, Doc. No. 15.)

[65] (*See id.*)

[66] *See Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) (noting post hoc rationalization would require the court to "overstep [its] institutional role and usurp

The Commissioner relies on *Webb v. Commissioner*[67] and *Endriss v. Astrue*,[68] but both cases are inapposite. These cases were decided under prior regulations (applicable to claims filed before March 27, 2017) which required relative weighing of medical opinions based on the relationship between the medical provider and the claimant.[69] The prior regulations listed supportability and consistency among the factors to be considered,[70] and ALJs had to give "good reasons . . . for the weight assigned to a treating physician's opinion."[71] But unlike the current regulations, the prior regulations did not specifically require ALJs to articulate their consideration of the supportability and consistency factors for all medical opinion evidence.[72]

---

essential functions committed in the first instance to the administrative process"); *Zambrano v. Kijakazi*, No. 1:20-1356, 2022 U.S. Dist. LEXIS 96466, at *16 (D.N.M. May 31, 2022) (unpublished) (noting the Commissioner "may not rationalize the ALJ's rejection of [medical] opinions *post hoc*"); *see also Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) ("Judicial review is limited to the reasons stated in the ALJ's decision . . . .").

[67] 750 F. App'x 718 (10th Cir. 2018) (unpublished).

[68] 506 F. App'x 772 (10th Cir. 2012) (unpublished).

[69] *See* 20 C.F.R. § 404.1527.

[70] *Id.* § 404.1527(c)(3)–(4).

[71] *Webb*, 750 F. App'x at 721 (citation omitted).

[72] *See* 20 C.F.R. § 404.1527; *see also* Revisions to Rules Regarding the Evaluation of Med. Evidence, 82 Fed. Reg. 5844, 5854 (Jan. 18, 2017) (noting the new regulations require adjudicators, "at a minimum, to articulate how they considered the supportability and consistency factors for all of a medical source's medical opinions or prior administrative medical findings.").

*Webb* and *Endriss* are distinguishable for other reasons as well.  In *Endriss*, the court held that the ALJ was not required to reiterate the objective medical evidence on which he relied to reject one treating source's opinion when he already had summarized that evidence in rejecting another treating source's "virtually identical" opinion.[73]  Unlike *Endriss*, this case does not involve two identical opinions, where the ALJ's reasoning as to one can be inferred as applying to the other.  And in *Webb*, the ALJ made express findings that an opinion was not well supported or consistent with the record, but the claimant argued the ALJ's reasons for those findings were insufficiently specific.[74]  The court found the ALJ's general reference to medical evidence "discussed above" adequate because it was "not difficult to determine what inconsistencies the ALJ relied upon."[75]  Here, by contrast, the ALJ did not make express findings regarding the supportability or consistency of Dr. Colledge's opinions, and he did not explain how he considered those factors, as required.

The Commissioner does not assert harmless error.  And it is not apparent the ALJ's error is harmless, where the ALJ relied on Dr. Colledge's opinions in finding Ms. G.'s mental RFC was not as limited as Ms. G. alleged.[76]  Because the ALJ failed to

---

[73] 506 F. App'x at 776–77.

[74] 750 F. App'x at 720–21.

[75] *Id.* at 721.

[76] (*See* Tr. 24–25, 29–30.)

adequately articulate how he evaluated Dr. Colledge's medical opinions as required by agency regulations, reversal and remand is required.

Where reconsideration of the evidence on remand may impact both the mental RFC determination (including limitations relating to concentrating, persisting, or maintaining pace) and a determination of whether additional development of the record is needed, the court does not address Ms. G.'s other contentions of error.

## RECOMMENDATION

Because the ALJ did not adequately articulate his evaluation of the psychological consultative examiner's medical opinions, the undersigned recommends the district judge reverse the Commissioner's decision and remand for additional administrative proceedings.  The parties have the right to object to this Report and Recommendation within fourteen days, and failure to object may be considered a waiver of objections.[77]

DATED this 12th day of March, 2026.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

---

[77] *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 72(b).